**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ANTONIO S. BROWN   # 157889**                                             **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO. 1:17cv306-RHW**

**PENNY BUFKIN,** *et al.*                                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is [59] Defendants' February 14, 2019 motion for summary judgment in this prisoner civil rights lawsuit filed under 42 U.S.C. § 1983.  Movants assert they are entitled to summary judgment based on sovereign immunity, qualified immunity and state law immunity. Although the *pro se* Plaintiff moved for and was granted an extension of time until April 5, 2019 to respond to the summary judgment motion, he has filed no response and the matter is now ripe for ruling.  All parties consented to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 at the omnibus/screening hearing held on July 25, 2018, and the case was reassigned to the undersigned for all purposes.  [35], [38]  At the hearing, Defendants provided Brown copies of over 600 pages of his prison institutional records, including medical records, for the time period surrounding his complaint.  [59-1, p. 31]

Facts and Procedural History

When he filed this lawsuit in October 2017, Antonio Sanchez Brown was a Mississippi Department of Corrections (MDOC) inmate housed at Wilkinson County Correctional Facility at Woodville, MS, serving ten years for a March 24, 2010 Lauderdale County conviction of statutory rape.  All the events of which Brown complains in his lawsuit occurred in 2017 while he was housed at South Mississippi Correctional Institution (SMCI) in Leakesville, MS.  At all

times pertinent to this case, all Defendants were MDOC employees at SMCI. Brown was released from custody in November 2018.

Brown alleges the Defendants violated his Eighth Amendment rights and were negligent in failing to protect him from assault by other inmates. Specifically, Brown asserts that on February 22, 2017 he was in the prison Area 1 administration building awaiting a housing transfer after being interviewed about problems in Unit 9; Brown testified he told mental health counselor Franklin that he did not feel safe on Unit 9 because gang members there were trying to make him hide their contraband for them. While he had not been assaulted on Unit 9, he had been threatened by inmates there and he had requested and been granted a transfer from that housing unit. [59-1, p. 9] Counselor Franklin contacted CID (Corrections Investigation Division) Officer Bufkin, and Brown was told to stay in the administration building. As he waited to be transported to his new housing assignment, K-9 officers came to the building and Brown heard them say they were going to do a shakedown in Unit 9 as well as something about finding five cell phones during a shakedown there. Because he was not in the Unit for the shakedown, Brown feared he would be accused of snitching.

Brown testified Lieutenants Frost and Robinson told him that some Unit 9 inmates said Brown could not return to Unit 9, that they were going to kill him or put a hit on him because they believed Brown had snitched on where their contraband was hidden. [59-1, p. 17] He alleges he told Ms. Franklin this, and that he feared for his life and felt suicidal. Brown asked for protective custody (PC) and was told he was being transferred to Area 3. Captains Lockhart and Smith responded to his protective custody request, "You should have stayed on PC when you was on PC."[1] Brown was moved from SMCI 1 to SMCI 3 on February 22, 2017, and was never

---

1 Brown arrived at SMCI on February 25, 2015, and testified he was on PC from February 2015-March 2016 because he is homosexual. He voluntarily signed off PC in March 2016. [59-1, pp. 18-20]

returned to Unit 9. [59-2, p. 2] In an amended complaint [5] filed November 6, 2107, Brown alleged he wrote Deputy Warden Barnes on March 22, 2017 asking about PC, but Barnes found no reason to place him on protective custody since he had been moved away from the Area 1 Compound, and told him if he had issues with his new housing assignment he should advise administration staff. [59-1, p. 27] Brown alleged he filed a grievance concerning his safety and requesting protective custody on April 12, 2017, but Bufkin denied the request.

On May 21, 2017, three months after his removal from Unit 9, Brown was stabbed by inmate Fredrick Smith. Brown alleged Smith is a Vice Lord gang member, but he testified he did not know Smith and that he had no notice that Smith was going to attack him before the attack occurred. [59-1, pp. 15, 23-24] Brown testified he heard Smith say the attack was for snitching. According to Brown, Smith has been indicted for attacking him. [59-1, pp. 23, 25]

Defendants urge they are entitled to Eleventh Amendment immunity as to any official capacity claims against them. Defendants further contend they are entitled to qualified immunity on Brown's § 1983 failure to protect claims against them individually since Brown cannot show they acted in an objectively unreasonable manner, and that Brown's state law negligent failure to protect claim is barred by the Mississippi Tort Claims Act.

## Summary Judgment Standard

Rule 56, FED.R.CIV.P., requires that summary judgment be granted if the movants show there is no genuine dispute as to any material fact and they are entitled to a judgment as a matter of law. A material fact is one that might affect the outcome of the suit under governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence and draws reasonable inferences most favorable to the non-moving party on a

motion for summary judgment. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). The burden of proof at the summary judgment stage rests on the party who has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). One moving for summary judgment must identify those portions of the pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. Once the movants carry this burden, the non-movant must show summary judgment should not be granted. The non-movant cannot meet his burden by resting upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). *See also*, *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir. 2010). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence will not suffice to create a real controversy regarding material facts. *Johnson v. Bernstein*, 547 F. App'x 412, 413 (5th Cir. 2013) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

<u>Sovereign Immunity</u>

Movants first urge that sovereign immunity entitles them to dismissal of any official capacity claims Brown may be asserting against them. The Eleventh Amendment to the United States Constitution bars an individual from suing a state in federal court unless the state consents

to suit or Congress has clearly and validly abrogated the state's sovereign immunity. U.S. Const. Amend. XI; *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, (1999). Congress did not abrogate Eleventh Amendment immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). And Mississippi has not waived its Eleventh Amendment immunity. MISS. CODE ANN. § 11-46-5(4) ("nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

Eleventh Amendment immunity from suit for monetary damages protects not only the state, but also state agencies deemed to be "an arm of the state," and employees of such agencies who are sued in their official capacities. See *American Bank and Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("suit against a state official in his or her official capacity ... is no different from a suit against the State itself."). The Mississippi Department of Corrections is an arm of the State of Mississippi and is protected from suit by the Eleventh Amendment. *See Williams v. Mississippi Dept. of Corrections*, 2012 WL 2052101, at *1-2 (S.D. Miss. June 6, 2012); *Dandridge v. Mississippi*, 2009 WL 4940105, at *7 (S.D. Miss. December 14, 2009). The Defendants, as employees of the MDOC and thus of the State of Mississippi, are protected by sovereign immunity from Brown's § 1983 monetary damage claims against them in their official capacities, and any such claims will be dismissed.

Qualified Immunity

While 42 U.S.C. § 1983 provides for liability of a person acting under color of state law who deprives another of federally protected rights, the statute does not create a cause of action; it

merely affords a remedy to those who, as a result of state action, are deprived of rights, privileges, or immunities secured by the Constitution and the laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). "Section 1983 is not a federally created tort statute." *Coughhorn v. Jackson County*, 2006 WL 3197855, at *2 (S.D. Miss. Nov. 2, 2006).

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For claims made against them in their individual capacities, Defendants contend they are entitled to qualified immunity. In resolving a qualified immunity claim, the Court must decide whether the facts alleged show the conduct of the officers conduct violated a constitutional right and whether the right was "clearly established" at the time of its alleged violation. An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. at 741. To find that the law was clearly established, the court must "be able to point to controlling authority — or a 'robust consensus of persuasive authority' — that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-372 (5th

Cir. 2011). This does not require a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Brown claims Defendants failure to protect him from the attack by Smith violated his Eighth Amendment Rights. Although not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety," a prison official's failure to protect a prisoner from attack by fellow inmates may constitute cruel and unusual punishment in violation of the Eighth Amendment under some circumstances. *Farmer v. Brennan*, 511 U.S. 825, 832-834 (1994). Prison officials are charged with protecting prisoners from known excessive risk; they "are not ... expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). To state a cognizable claim for failure to protect under 42 U.S.C. § 1983, Brown had to present facts showing he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

A prison official acts with the requisite deliberate indifference if the official is aware of an excessive risk to inmate safety and disregards that risk, however, no liability exists where the official reasonably responded to a known substantial risk. *Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 837, to act with deliberate indifference "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligent failure to protect is not actionable under § 1983, nor is deliberate indifference established by an official's failure to alleviate a significant risk that the official should have perceived but did not. *Thompson v. Upshur County,*

*TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); s*ee also, Sanders v. Cabana*, 2007 WL 922287 (N.D. Miss. March 26, 2007) (holding an official's issuing a "keep separate" alert rather than immediately processing a red tag against an inmate who subsequently attacked plaintiff insufficient to state a § 1983 claim).

In this case, when Brown reported having problems and being threatened by fellow inmates at Unit 9, SMCI officials promptly moved him away from Unit 9, transferring him to a different compound, from SMCI 1 to SMCI 3, and the Deputy Warden told him if he had any problem at his new housing assignment he should report it to administrative staff. Although Brown continued to inquire about protective custody, nothing before the Court indicates that he reported a problem with his new housing assignment for the three months he lived there before Smith attacked him. Brown has presented no evidence that he ever expressed anything more than a generalized fear of gang-affiliated inmates. "A prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Williams v. Management & Training Corp.*, 2017 WL 8793429, at *3 (S.D. Miss. November 2, 2017) (citing *Coleman v. Tanner*, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010)). Furthermore, Brown testified he did not know Smith and had no notice that Smith was going to attack him. These facts provide no foundation upon which the Court can find that Defendants knew of a substantial risk of serious harm to Brown, or that they were deliberately indifferent to his need for protection. Deliberate indifference is not established by the fact that Defendants addressed Brown's concerns by moving him to a different compound instead of placing him in protective custody. "[I]t would

be an unreasonable interference with prison administration to rule that Defendants had a duty to house Plaintiff at a facility of his choosing based on his generalized fears." *Williams v. Management & Training Corp.*, 2017 WL 8793429, at *3 n.4, citing *Jones v. U.S.*, 534 F.2d 53, 54 (5th Cir. 1976) (prison officials have broad discretion, free from judicial interference, in determining prisoner assignments); *Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988) (courts defer to prison administrators concerning day-to-day prison operations); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (prisoners have no constitutional right to be incarcerated in a certain facility). Even if Defendants were mistaken in choosing to move Brown in response to his situation, "decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Negligent failure to protect an inmate does not rise to the level of a constitutional violation and is not actionable under § 1983. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990); *Todd v. Burns*, 95 F. App'x 83 (5th Cir. 2004) ("negligence claims are not cognizable" under § 1983); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Thompson v. Upshur County*, 245 F.3d at 459.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 995 (5th Cir. 1995) (plaintiff must "allege facts specifically focusing on the conduct of [the officer] which caused his

injury"); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). To negate the qualified immunity defense Brown was required to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015) (internal quotation marks and citation omitted). "[T]he burden is on the plaintiff to 'demonstrate the inapplicability of the defense.'" *Coleman v. Marion County*, No. 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon*, 305 F.3d at 323).

The Court finds Brown has failed to present facts showing the requisite deliberate indifference essential to his Eighth Amendment failure to protect claim. Defendants did not ignore Brown's expressed fear due to threats by gang members; they immediately responded, moving him to a different compound. The Court finds Defendants' decision was objectively reasonable under the circumstances then and there existing. Brown has failed to demonstrate that qualified immunity is inapplicable in this case.

State Law Immunity

Finally, Defendants submit that the Mississippi Tort Claims Act (MTCA) bars Brown's state law claim of negligent failure to protect. Absent waiver, the State and its political subdivisions enjoy sovereign immunity from suit. Miss. Code Ann. § 11-46-3. The MTCA provides a limited waiver of sovereign immunity and is the exclusive remedy for any state law tort claim against a governmental entity or its employees acting within the course and scope of their employment. Miss. Code Ann. §§ 11-46-3, 11-46-7. Excepted from the waiver is any claim of one who is an inmate of a penal institution when his claim arises. Miss. Code Ann. § 11-46-9(1)(m). "[The statute], without exception, prohibits all claims from claimants who are inmates at the time the claim arises." *Whitt v. Gordon*, 872 So.2d 71, 74 (Miss. Ct. App. 2004);

*Clay v. Epps*, 19 So.3d 743, 746 (Miss. Ct. App. 2008), *reh'g den.*, *cert. den.* (2009). Because Brown was an inmate when his claims arose, his state law claim of negligent failure to protect is barred by the MTCA. It is therefore,

**ORDERED AND ADJUDGED** that [59] Defendants' motion for summary judgment is granted, and this action dismissed. A separate judgment will be entered.

SO ORDERED, this the 17th day of July 2019.

*Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE